THE STATE OF OHIO, APPELLEE, *v.* KISER, APPELLANT.

(No. 40766—Decided March 13, 1968.)

*Mr. Melvin G. Rueger*, prosecuting attorney, and *Mr. Dominic Perrino*, for appellee.
*Mr. Henry E. Sheldon*, for appellant.

O'NEILL, J. The first question presented to the court is: Is the affidavit void on the ground that it does not state an offense under the laws of Ohio?

The defendant contends that the affidavit is fatally defective because it fails to state that the letter was sent

128

or delivered *with an intent to obtain from another person any money, article of personal property, or other thing of value.*

Section 2901.39, Revised Code, in pertinent part provides:

*"No person shall knowingly send or deliver a writing* for the purpose of extorting money or other valuable thing, or *containing willful and malicious threats of injury,* or knowingly send, deliver, mail, or in any manner cause to be sent, delivered, or mailed, any paper or document simulating or intended to simulate a summons, complaint, warrant, writ, or other court process of any kind, with intent to obtain from another person any money, article of personal property, or other thing of value." (Emphasis added.)

It is clear that the General Assembly, in enacting Section 2901.39, Revised Code, sought to prevent a person from "knowingly" sending or delivering "a writing * * * containing willful and malicious threats of injury." Such conduct, without any intent to extort, constitutes a violation of the statute.

That "intent to extort" was not considered by the General Assembly to be an essential element of the offense in question is evidenced from a comparison of Section 2901.39, *supra*, with Section 2901.38, Revised Code. Section 2901.38, on its face, purports to prohibit some of the kinds of criminal conduct proscribed by Section 2901.39. There is a substantial overlap between the first and third disjunctive clauses of Section 2901.39 and the scope of Section 2901.38.

In Section 2901.39, the General Assembly intended to prohibit a kind of conduct which was not already prohibited, *i. e.*, knowingly sending or delivering a writing containing willful and malicious threats of injury. While not totally persuasive, the title of Section 2901.39, "Threatening Letters," adds credence to this construction of the statute. See *State, ex rel. Murphy,* v. *Athens County Board of Elections* (1941), 138 Ohio St. 432, 435, 35 N. E. 2d 574.

In summary, Section 2901.39, Revised Code, prohibits three distinct kinds of conduct:

1. Sending or delivering a writing with a purpose to extort;

2. Sending or delivering a writing containing willful and malicious threats of injury;

3. Sending or delivering a writing simulating process with intent to extort.

Upon his arrest, the defendant was taken to the county jail and was "advised" by the arresting officer to make a written statement concerning his knowledge of the offense. Prior to making such statement, inculpatory in part, defendant was told that "any statements * * * would have to be of his own free will."

The question presented to this court is: Should the statement, written in defendant's own handwriting, have been excluded on the ground that its admission violated the Fifth Amendment to the United States Constitution?

The handwritten statement was introduced in evidence, over the objection of the defendant, at the trial, which was to the court without a jury, as a sample of defendant's handwriting, to be used to determine whether the defendant had written the threatening letter in question.

The Fifth Amendment to the United States Constitution does not require that the statement be excluded. *Gilbert* v. *California* (1967), 388 U. S. 263, 18 L. Ed. 2d 1178, 87 S. Ct. 1951, and *Schmerber* v. *California* (1966), 386 U. S. 757, 16 L. Ed. 2d 908, 86 S. Ct. 1826. In *Schmerber, supra,* 386 U. S. 757, at page 764, it is stated:

"* * * both federal and state courts have usually held that it [the privilege against self-incrimination] offers no protection against compulsion to submit to fingerprinting, photographing, or measurements, to write or speak for identification, to appear in court, to stand, to assume a stance, to walk, or to make a particular gesture. The distinction which has emerged, often expressed in different ways, is that the privilege is a bar against compelling 'communications' or 'testimony,' but that compulsion

which makes a suspect or accused the source of 'real or physical evidence' does not violate it."

See 8 Wigmore, Evidence, 386, Section 2265 (McNaughton Rev. [1961]); Weintraub, Voice Identification, Writing Exemplars and the Privilege Against Self-Incrimination, 10 Vanderbilt L. Rev. 485 (1957). See, also, annotations, 28 A. L. R. 2d 1115, and 16 A. L. R. 2d 1322.

The handwritten statement merely provided a basis for comparison with the threatening letter written to the complaining witness and her family, which comparison was made by the handwriting expert who testified at the trial.

The defendant contends that there is some imprecise and broad language in the opinion of the trial judge which indicates that, to some extent, he used the statement testimonially as proof of the facts therein.

Even if the statement be construed as testimonial, so that the privilege against self-incrimination applies, under then existing standards the statement made by defendant was voluntary. The arresting officer told the defendant that anything he wished to say "would have to be of his own free will." The natural implication from such a statement is that the defendant would not be compelled to say or write anything. By writing the statement under those circumstances defendant waived his constitutional right to remain silent. There is no evidence in the record of coercion, threats, or intimidation, either physical or psychological. *Cf. Spano* v. *New York* (1959), 360 U. S. 315, 3 L. Ed. 2d 1265, 79 S. Ct. 1202. The defendant merely complied with the officer's request, after being informed that if he did so it would be of his own free will. Thus, under the standards articulated in *Escobedo* v. *Illinois* (1964), 378 U. S. 478, 12 L. Ed. 2d 977, 84 S. Ct. 1758 (the trial of this case occurred subsequent to *Escobedo, supra*, but prior to *Miranda* v. *Arizona* [1966], 384 U. S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602; see *Johnson* v. *New Jersey* [1966], 386 U. S. 719, 16 L. Ed. 2d 882, 86 S. Ct. 1772), the trial court did not err in permitting the written statement to be introduced into evidence over defendant's objection. The state did not deny a request of defendant for counsel,

nor did it fail to effectively warn him of his constitutional right to remain silent. The statement in writing by the defendant was made voluntarily. *State* v. *Carder* (1966), 9 Ohio St. 2d 1, 222 N. E. 2d 620.

The judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

TAFT, C. J., ZIMMERMAN, MATTHIAS, HERBERT, SCHNEIDER and BROWN, JJ., concur.